# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2444

_____

United States of America

*Plaintiff - Appellee*

v.

Alfred Tucker

*Defendant - Appellant*

_____

No. 11-2489

_____

United States of America

*Plaintiff - Appellee*

v.

Alfred Tucker

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: April 18, 2012
Filed: August 23, 2012
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Alfred Tucker was convicted of being a felon in possession of a firearm, simultaneously resulting in a revocation of his supervised release from a previous conviction. He now appeals his conviction and sentences on various grounds. We affirm.

## I.    BACKGROUND

Tucker was arrested in Omaha, Nebraska after a traffic stop conducted by two Omaha police officers, Jodi Sautter and Anna Doyle. Officers Sautter and Doyle were on patrol when they were flagged down by an Omaha Housing Authority Officer, Dan Hagen. Sautter knew Hagen and had worked with him on a number of prior occasions. Hagen told the two police officers that gunshots had just been fired from the Ford Crown Victoria that he was following. The two police officers immediately pulled the Crown Victoria over. Tucker, who was seated in the front passenger seat, exited the Crown Victoria, repeatedly failed to comply with the officers' commands, and struggled with them, leading them to tase him a number of times and then arrest him. In a search of the Crown Victoria conducted incident to Tucker's arrest, the officers found a handgun and an ammunition box under the front passenger seat. Tucker's fingerprint was later found inside the ammunition box.

Tucker was charged by grand jury indictment with the knowing possession of a firearm after having been convicted of a prior felony, in violation of 18 U.S.C.

§§ 922(g), 924(a)(2). Tucker filed a motion to suppress evidence from the traffic stop and subsequent search of the Crown Victoria, which was denied by the district court,[1] and the case proceeded to trial. A jury found Tucker guilty, and the district court, determining him to be an armed career criminal in possession of a firearm pursuant to 18 U.S.C. § 924(e), sentenced him to 188 months' imprisonment and a consecutive 24 months' imprisonment for violating supervised release conditions related to Tucker's prior conviction.

Tucker now appeals on a number of grounds. He argues (1) that the district court erred in denying his motion to suppress because Officers Sautter and Doyle lacked reasonable suspicion to stop the Crown Victoria; (2) that the evidence presented at trial was insufficient to sustain his conviction; (3) that the district court erred in admitting testimony by Officer Hagen as to statements made by onlookers who witnessed the shooting because the testimony was unduly prejudicial; and (4) that the district court made various sentencing errors.

## II. DISCUSSION

### A. Motion to Suppress

"We affirm a denial of a motion to suppress unless the district court's decision 'is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.'" *United States v. Bay*, 662 F.3d 1033, 1035 (8th Cir. 2011) (quoting *United States v. Annis*, 446 F.3d 852, 855 (8th Cir. 2006)). We review the district court's findings of fact for clear error and its legal conclusions *de novo*. *Id.* Police are allowed to stop

---

[1] The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska, adopting the findings and recommendation of the Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

and briefly detain a person for investigative purposes if they have a "reasonable, articulable suspicion of criminal activity." *United States v. Sawyer*, 588 F.3d 548, 553 (8th Cir. 2009); *see Terry v. Ohio*, 392 U.S. 1, 21 (1968). The reasonableness of an officer's suspicion is assessed "in light of the facts known to the officer at the time" of the stop. *Adams v. Williams*, 407 U.S. 143, 146 (1972). Tucker claims that Officers Sautter and Doyle had no reasonable suspicion to justify the felony stop and that all evidence resulting from the stop, including the handgun and ammunition box, should be suppressed.

Officers Sautter and Doyle were flagged down by Officer Hagen, who told them that shots had just been fired from the Crown Victoria that they saw he was following. Officer Sautter had previously interacted professionally with Officer Hagen, who regularly worked with Omaha police officers. We have found reasonable suspicion on much less compelling facts. In *United States v. Collins*, for example, we found a *Terry* stop to have been proper when officers pulled over a car solely because it matched a description of a car that had been reported as having been involved in a robbery. 532 F.2d 79, 81 (8th Cir. 1976). We also have held security guards to be especially reliable tipsters in the context of assessing the reasonableness of a police officer's suspicion, especially when such guards work directly with police in the course of their duties. *United States v. Robinson*, 670 F.3d 874, 876-77 (8th Cir. 2012). A direct, in-person identification of a car as having just been involved in a crime, especially one made by a housing authority officer who had previously worked with one of the investigating officers, is sufficient to give rise to the necessary "reasonable, articulable suspicion" to justify a *Terry* stop.

## B.     Sufficiency of the Evidence

We review challenges to the sufficiency of the evidence *de novo*, resolving all evidentiary conflicts in favor of, and accepting all reasonable inferences that support, the jury's verdict. *United States v. Yarrington*, 634 F.3d 440, 449 (8th Cir. 2011).

To convict Tucker under § 922(g), the government had to prove beyond a reasonable doubt that (1) Tucker previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) Tucker knowingly possessed a firearm; and (3) the firearm had moved in or affected interstate commerce. *See United States v. Walker*, 393 F.3d 842, 846 (8th Cir. 2005). On appeal, Tucker argues only that the Government presented insufficient evidence on the second element, namely that he knowingly possessed a firearm.

The evidence presented at trial was sufficient to convict Tucker. Tucker was in the front passenger seat of the Crown Victoria when it was stopped shortly after a report of a shooting. A handgun and ammunition box were found under the front passenger seat, and one of Tucker's fingerprints was found inside the ammunition box. Shell casings recovered from the scene of the shooting were later linked through forensic ballistics analysis to the handgun. Tucker refused to comply with police orders after the Crown Victoria was pulled over and resisted arrest to the point that Officers Sautter and Doyle were required to tase him a number of times. It would have been reasonable for a jury to infer that Tucker knowingly possessed the gun underneath his seat in light of its location, *see, e.g.*, *Walker*, 393 F.3d at 846, the fingerprint found on its accompanying ammunition box, *see, e.g.*, *United States v. Winston*, 456 F.3d 861, 867 (8th Cir. 2006), and Tucker's resistance, *see, e.g.*, *United States v. Peltier*, 585 F.2d 314, 323 n.7 (8th Cir. 1978). Although Tucker testified that the fingerprint may have been placed on the ammunition box accidentally as he reached for his hat under his seat and that he knew nothing about the gun, we defer to the credibility determinations of the jury, *see United States v. Boyce*, 564 F.3d 911, 916 (8th Cir. 2009), which was certainly entitled to disbelieve Tucker's self-serving testimony.

## C. Hagen's Testimony

"We review a district court's interpretation and application of the rules of evidence de novo and its evidentiary rulings for abuse of discretion." *United States v. Pumpkin Seed*, 572 F.3d 552, 558 (8th Cir. 2009) (quoting *United States v. Street*, 531 F.3d 703, 708 (8th Cir. 2008)). At trial, Officer Hagen testified that he was on patrol when he heard shots fired. He began to follow the Crown Victoria, the only vehicle he saw in the area, when bystanders shouted at him, "Hey, that car was just shooting." Tucker objected at trial that this statement was inadmissible hearsay, but the district court overruled his objection on the ground that the statement was not offered for the truth of the matter asserted but rather as showing why Officer Hagen continued following the Crown Victoria.

Although he now concedes that the statement did not constitute inadmissible hearsay, Tucker raises for the first time on appeal an alternate argument for the inadmissibility of the bystander statement—that the statement was unduly prejudicial and therefore should have been excluded under Federal Rule of Evidence 403. Rule 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Because this argument was not properly preserved before the district court, we review for plain error and will reverse only if Tucker can show that the district court committed a clear and obvious error that affected both his substantial rights and the fairness, integrity, or public reputation of the judicial process. *See United States v. Ali*, 616 F.3d 745, 751-52 (8th Cir. 2010). To demonstrate an effect on his substantial rights, a defendant ordinarily has to show that the error "affected the outcome of the district court proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Satisfying this prong would require Tucker to show "a reasonable probability that the outcome would have been different absent the alleged error." *See United States v. Yielding*, 657 F.3d 688, 707-08 (8th Cir. 2011), *cert. denied*, 565 U.S. ---, 132 S. Ct. 1777 (2012).

Even if Tucker could show that Hagen's testimony should have been excluded under Rule 403, he still would not be able to meet his burden under this rigorous standard. The evidence that Tucker, a felon, knowingly possessed the firearm found under his seat was substantial. *See supra* Part II.B. Furthermore, Hagen's testimony that bystanders directed him to the Crown Victoria as the source of the shots he had heard was not unfairly prejudicial to Tucker. The testimony did not identify Tucker as the shooter, and subsequent forensic analysis linked the firearm to shell casings found at the scene. Tucker has failed to show "a reasonable probability that the outcome would have been different absent the alleged error," and we therefore find that "[t]here was no plain error warranting relief." *Yielding*, 657 F.3d at 708.

## D.    Sentence

The Armed Career Criminal Act ("ACCA") provides for enhanced sentences for those with three prior convictions for a violent felony who are convicted of being a felon in possession of a firearm. 18 U.S.C. § 924(e). A violent felony is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Tucker argues that the district court erred in considering his conviction for escape from a juvenile facility and his two convictions for assault as predicate violent felonies for ACCA purposes.

With respect to his escape conviction, Tucker concedes that he was convicted for an escape from custody, but he asserts that his escape was a mere "walk away escape." He likens this sort of escape to the failure-to-report offense that the Supreme Court held was not a violent felony for ACCA purposes in *Chambers v. United States*, 555 U.S. 122, 127-30 (2009). However, we have held that "*Chambers* . . . leaves intact our precedent holding that escape from custody is a crime of violence." *United States v. Pearson*, 553 F.3d 1183, 1186 (8th Cir. 2009).

-7-

Furthermore, Tucker concedes that his conviction was for the escape from custody part of the Nebraska escape statute and not the failure-to-report part, *see* Neb. Rev. Stat. § 28-912(1), and we have held post-*Chambers* that convictions under the escape from custody part of the very same statute are violent felonies for ACCA purposes. *United States v. Williams*, 664 F.3d 719, 720 (8th Cir. 2011). Tucker's argument is thus precluded by binding precedent, and we therefore hold that his escape conviction was properly considered an ACCA predicate offense.[2]

Tucker next argues that neither of his assault convictions are violent felonies for ACCA purposes because both of the state statutes under which he was convicted criminalized both recklessly and intentionally causing bodily injury. Some circuits have held that merely reckless conduct cannot be the basis for an ACCA predicate offense. *See, e.g.*, *United States v. Jenkins*, 631 F.3d 680, 685 (4th Cir. 2011); *United States v. Smith*, 544 F.3d 781, 785-86 (7th Cir. 2008). We have not adopted such a broad rule, *see United States v. Jones*, 574 F.3d 546, 550-51 (8th Cir. 2009) ("[T]he Eighth Circuit has not held that crimes with a mens rea of recklessness cannot constitute violent felonies."), but we have indicated that some assault statutes that include reckless conduct require analysis under the modified categorical approach, *see United States v. Ossana*, 638 F.3d 895, 901-03 (8th Cir. 2011) (declining to find a conviction under an Arizona aggravated assault statute categorically a crime of violence); *but see id.* at 901 n.6 ("We qualify and limit our holding to the crimes such as the crime at issue which encompasses the unadorned offense of reckless driving resulting in injury.").

---

[2]Tucker also argues that the district court erred in permitting Jana Peterson, the facility administrator of the detention facility from which Tucker had been convicted of escaping, to testify at sentencing about the characteristics of the facility. Because our conclusion does not rely on Ms. Peterson's testimony, any error in allowing her to testify was harmless. *See* Fed. R. Crim. P. 52(a).

Where "the statute of conviction criminalizes multiple kinds of behavior, we must identify the proper category that embraces the defendant's conviction." *United States v. Wilson*, 568 F.3d 670, 672 (8th Cir. 2009). Under this modified categorical approach, we may look to sources including a defendant's charging document or "any explicit factual finding by the trial judge to which the defendant assented" to assess the nature of the offense in question. *Shepard v. United States*, 544 U.S. 13, 16 (2005). With respect to his first assault conviction, Tucker does not contest that he was charged by information with and convicted of "[i]ntentionally or knowingly caus[ing] bodily injury to another person with a dangerous instrument." Neb. Rev. Stat. § 28-309(a). In determining the proper category for his second assault conviction, we may consider the assented-to factual basis provided for a guilty plea. *Williams*, 664 F.3d at 721-22. During his guilty plea proceeding, Tucker agreed that he intentionally struck the victim several times.[3] Tucker's argument that his assault convictions do not constitute violent felonies therefore fails, and we affirm the application of the ACCA to his sentencing.

Tucker also requests that we order his supervised-release revocation sentence to run concurrently to his sentence for his felon-in-possession conviction. However, "[t]he decision to impose a consecutive or concurrent sentence upon revocation of supervised release is committed to the sound discretion of the district court," *United States v. Cotroneo*, 89 F.3d 510, 512 (8th Cir. 1996), and Tucker has provided us with

---

[3]We have previously used *Shepard* documents to determine specifically which *mens rea* category of a statute a prior conviction fell into in equivalent applications of the modified categorical approach. *See Olmsted v. Holder*, 588 F.3d 556, 560 (8th Cir. 2009) (making such a determination in the 8 U.S.C. § 1227(a)(2)(A) context); *Bobadilla v. Holder*, 679 F.3d 1052, 1054-55 (8th Cir. 2012) (noting that the § 1227(a)(2)(A) "categorical approach is consistent with Supreme Court decisions determining whether a prior conviction was a violent felony under the Armed Career Criminal Act").

no reason to find the imposition of consecutive sentences here to be an abuse of discretion.

## III. CONCLUSION

For the foregoing reasons, we affirm.

_____